# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 19 CR 75 1 JPS |
| MICHAEL L. CORBITT, JR., | |
| Defendant. | **ORDER** |

## 1.    BACKGROUND

On January 17, 2023, Defendant Michael L. Corbitt, Jr. ("Defendant") filed a third motion for compassionate release. ECF No. 99.[1] The Government responded and requested that its submission be kept under seal. ECF Nos. 104, 105. Defendant has since filed a "supplement" to his motion, ECF No. 106; an initial reply brief, which he later withdrew, ECF Nos. 119, 121, and 124; and a reply brief, ECF No. 127.[2] His submissions also

---

[1] Defendant withdrew his first motion for compassionate release. ECF No. 84. His second motion was denied without prejudice because it did not indicate whether Defendant had exhausted his administrative remedies. ECF No. 98.

The Court further notes that Defendant's motion requests "compassionate release to home confinement [sic]." ECF No. 99 at 1; *see also* ECF No. 95 (Defendant's prior "motion for compassionate release" requesting "the Court to consider releasing [him] on home confinement"). The Court below explains why it cannot field a request for home confinement, and accordingly in this Order construes Defendant's request as one for reduction in his sentence on the basis of compassionate release. *See infra* Section 4.1.

[2] The Court granted several extensions on Defendant's time to file a reply brief in light of his being moved from one Bureau of Prisons ("BOP") institution to another and apparently not having received all of the Government's filings appended to its brief in opposition. ECF Nos. 110, 116, 124; *see also* ECF No. 123 (certificate of service indicating the Government delivered its response and all exhibits thereto, which totaled over 360 pages, by mail to Defendant on April 17,

make requests for appointment of counsel and for return of materials he has filed. ECF No. 106 (request for return of documents included in filing and request for appointment of counsel); ECF No. 126 at 2 (request for appointment of counsel). He has additionally filed numerous requests for the Court to assist him in accessing COVID 19 economic stimulus payments. ECF Nos. 109, 117, 120, 125, 128, 131.

The Court examines each issue in turn. For the reasons stated herein, Defendant's motion for compassionate release, requests for appointment of counsel, and requests for assistance with accessing economic stimulus payments will all be denied. The Court will grant Defendant's request that certain filings be returned to him, will direct the Clerk of Court to do so, and additionally will grant the Government's motion to seal.

## 2. FACTS

In 2019, Defendant pled guilty to one count of bank robbery and one count of attempted bank robbery and was sentenced to ninety six months in federal prison. ECF Nos. 41 and 76 at 2. Defendant is currently detained

---

2023). The last extension in this series allowed Defendant twenty-one days from April 21, 2023, i.e., until May 12, 2023, to submit a reply brief. Defendant submitted what is styled on the docket as a reply brief, dated April 23, 2023 and filed on April 27, 2023. ECF No. 126. However, this submission does not respond substantively to the Government's arguments in opposition to Defendant's motion, though it does make a request for counsel. *Id.* at 2. The Court therefore considers this filing to the extent it requests appointment of counsel, but disregards it as part of the merits briefing in this matter.

A true reply brief—responding substantively to the Government's arguments in opposition—was filed on May 19, 2023. ECF No. 127. It is dated either May 5, 6, or 10, 2023. *Id.* at 1, 2. Assuming one of the three dates Defendant wrote on the filing is indeed the date when he "tendered [them] to prison staff in accordance with reasonable prison policies," this filing is likely timely under the prison mailbox rule. *See Taylor v. Brown*, 787 F.3d 851, 859 (7th Cir. 2015). The Government has not challenged the timeliness of this filing, and the Court has considered its substance.

at the medium security branch of the Federal Correctional Institution at Allenwood ("FCI Allenwood Medium") in Pennsylvania.[3] *See* Fed. Bureau of Prisons, *Inmate Locator*, https://www.bop.gov/inmateloc/ (last visited July 10, 2023). His projected release date is in February 2026. *See id.*

In his motion, Defendant asks the Court to release him from prison either to home confinement or via a reduction in the length of his sentence, *see supra* note 1   because he suffers from a variety of medical conditions and health issues including "con[g]estive heart failure, cardiomyopathy, . . . chronic obstructive pulmonary disease[,] hypertension[,] . . . morbid obesity[,] [and] pre diabetes." ECF No. 99 at 3; *see also* ECF No. 105 at 5 (Government's response brief listing similar conditions). Defendant later notes that he experiences depression and anxiety. ECF No. 127 at 2.

The Government has provided additional information about Defendant's medical history. Defendant was "treated for congestive heart failure in March 2019 and was given a defibrillator" and has been on "multiple medications for his heart and high blood pressure" and additionally has used "a CPAP machine for his sleep apnea." ECF No. 105 at 5  6 (citing presentence investigation report, ECF No. 72 at 19  20). Later, Defendant "[w]hile in custody . . . received an implantable cardioverter defibrillator ('ICD')" to help manage his heart conditions. *Id.* "In May 2022, his ICD 'shocked him' after he engaged in intense exercise, and he was immediately taken to the emergency room." *Id.* "Because of his ICD, the

---

[3]At sentencing, the Court directed that the term of federal confinement be run concurrently to the sentences imposed in Defendant's state criminal cases. ECF No. 76 at 2. Accordingly, after Defendant served the remainder of his state sentences in state prison, he was transferred to federal custody and housed at the U.S. Penitentiary in Terre Haute, Indiana. ECF No. 105 at 2. He was then briefly held at the Federal Transfer Center in Oklahoma City, Oklahoma, ECF No. 114, and then finally moved to FCI-Allenwood Medium. ECF No. 118.

BOP has designated [Defendant] a 'Care Level 3' inmate," meaning he receives "frequent clinical contacts to maintain control or stability" of his condition. *Id.* (quoting Fed. Bureau of Prisons, *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited July 10, 2023)).

While in prison, Defendant has lost a significant amount of weight. ECF No. 99 at 3; ECF No. 105 at 6 ("Corbitt weighed about 400 pounds . . . at the time of his sentencing hearing" and "[a]ccording to BOP records, he now weighs about 291 pounds"); ECF No. 127 at 1. Defendant contends that he undertook to lose weight on the advice of his criminal defense attorney "to show this court [he is] serious about his health." ECF No. 99 at 3; ECF No. 127 at 1 ("[I]t was the advice of the Federal Defender Service court app[ointed] lawyer [that] 'this court will not release you if you don['t] show you can loose [sic] weight and get your health under control . . . .'").

In addition to noting his health issues, Defendant avers that, while in state custody, he contracted and recovered from COVID 19. ECF No. 99 at 3. Though he does not directly name his particular risk of COVID 19 as an extraordinary and compelling reason counseling his release, he points out in his motion that "the risk [of COVID 19] is still high" in the institutional setting. *Id.*

As of July 10, 2023, FCI Allenwood Medium reports no active cases of COVID 19 among any inmates or staff. Fed. Bureau of Prisons, *BOP COVID 19 Statistics*, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited July 10, 2023). No inmate deaths have been reported, and 589 inmates and 54 staff have recovered from the virus. *Id.* Further, FCI Allenwood Medium's operational level, which is a function of

the institution's "COVID 19 inmate isolation rate and the COVID 19 community risk of the county where the facility is located," currently reflects the lowest level of risk. Fed. Bureau of Prisons, *COVID 19 Modified Operations Plan & Matrix*, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited July 10, 2023).

### 3. LEGAL STANDARD

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must also be "extraordinary and compelling reasons warrant[ing] such a reduction[.]" *Id.* § 3582(c)(1)(A)(i).

While § 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission," this circuit recently held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). A district court may also "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 n.1(D)]." *United States v. Brown*, No. 01 CR 196 JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug.

7, 2020). Yet, this Court will evaluate prisoner initiated motions for compassionate release with due regard for the guidance provided in § 1B1.13 because it "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Gunn*, 980 F.3d at 1180; *see also United States v. Mays*, No. 1:08 cr 00125 TWP DML, 2020 WL 7239530, at *3 (S.D. Ind. Dec. 9, 2020) (evaluating compassionate release motions brought under the "extraordinary and compelling" prong of § 3582(c)(1)(A) with "due regard" for § 1B1.13).

The commentary to the Sentencing Guidelines explains that "extraordinary and compelling reasons exist" when "[t]he defendant is suffering from a terminal illness, (i.e., a serious and advanced illness with an end of life trajectory)," such as cancer or advanced dementia. U.S.S.G. § 1B1.13 n.1.(A)(i). The commentary also considers a defendant's medical condition to be an extraordinary and compelling reason if:

> [t]he defendant is suffering from a serious physical or mental condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 n.1.(A)(ii). The Court will also consider whether "the defendant is not a danger" to others or the community, as provided in 18 U.S.C. § 3142(g). Id. § 1B1.13(B)(2). Relatedly, prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A).

4.    **ANALYSIS**

    4.1    **Nature of Relief Requested**

As noted *supra* note 1, Defendant's motion as written does not straightforwardly fit the compassionate release mold, since he has repeatedly requested "compassionate release to home confinement." ECF No. 99 at 1; ECF No. 106 (Defendant's "motion for home confinement compassionate release," requesting counsel "to help with [his] motion for a home confinement release"); ECF No. 105 at 9 (Government's opposition brief noting that "Corbitt now proposes that he be released immediately to home confinement"); *see also* ECF No. 95 (Defendant's prior "motion for compassionate release" requesting "the Court to consider releasing [him] on home confinement"). *But see, e.g.,* ECF No. 127 (reply brief referencing only "release" and not home confinement).

Home confinement and compassionate release are distinct concepts. Compassionate release is a vehicle to achieve a reduction in the length of a sentence   in other words, for release from the custodial portion of one's sentence on a date earlier than that originally contemplated in the sentencing judgment. *See* 18 U.S.C. § 3582(c)(1)(A) (authorizing district courts to "reduce the term of imprisonment" where "extraordinary and compelling reasons" exist). Release to home confinement, on the other hand, does not implicate a reduction in the length of the custodial portion of one's sentence; it only changes the custodial setting. *See* 18 U.S.C. § 3624(c)(2) (enabling BOP to "place a prisoner in home confinement" as a method of "prerelease custody").

The Court cannot field a request for home confinement; inmate custodial placements are the domain of the BOP. *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (affirming district court's rejection of compassionate release and further declining to consider defendant's "alternate request for transfer to home confinement," finding "district court

did not err by declining to review the merits of a request that it had no power to grant"). While the BOP's "power to 'place a prisoner in home confinement' under § 3624(c)(2)" was "expanded" under the federal Coronavirus Aid, Relief, and Economic Security (CARES) Act, the CARES Act

> reserved the determination of "suitable candidates" for home confinement to the Bureau. *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020) (quoting *Increasing Use of Home Confinement at Institutions Most Affected by COVID 19*, Off. Att'y Gen. (Apr. 3, 2020)). The act carved out no role for the courts in making such determinations. Nor for that matter is any such role envisioned under § 3624(c)(2), which authorizes the Bureau "to the extent practicable, [to] place prisoners with lower risk levels and lower needs on home confinement . . . ."

*United States v. Williams*, 829 F. App'x 138, 139 (7th Cir. 2020).

It appears from Defendant's filings that he confused the two forms of relief. This confusion was compounded by the Court, the BOP, and the Government, which all handled his filings as pertaining to a request for a reduction in sentence via the compassionate release vehicle. *See, e.g.*, ECF No. 99 1 ("A review of your request reveals you are requesting Home Detention/Confinement. This request has been forwarded to the Reduction in Sentence Coordinator."), 105 2 (examining Defendant's "Reduction in Sentence . . . (or compassionate release) request"), and 105 3 (citing 18 U.S.C. § 3582(c)(1)(A) and (d)(1) and declining to pursue a request for compassionate release on Defendant's behalf).

The Court construes Defendant's motion as requesting early termination of the custodial portion of his sentence via the compassionate release vehicle. The Court takes no position on whether Defendant is or may be suitable for home confinement, which as already explained, is solely a BOP determination.

Case 2:19-cr-00075-JPS   Filed 07/19/23   Page 8 of 25   Document 133

### 4.2 Factual Basis of Compassionate Release Motion

The Court next turns to clarifying what factual basis or bases might be considered as extraordinary and compelling reason(s) counseling Defendant's release. As outlined *supra* Section 2, Defendant appears to premise his compassionate release motion primarily on his medical conditions, but he also references, more or less in passing, his risk of contracting or suffering complications from COVID 19. Defendant does not specifically articulate whether or why he himself is at a heightened risk of contracting or suffering complications from COVID 19 nor does he draw a direct connection between his other preexisting medical conditions and his risk of COVID 19.

The Government points out that the operative compassionate release motion only briefly references COVID 19 but that his "petition to the Warden of his institution" did not make "any mention of concerns over COVID 19." ECF No. 105 at 3 (citing ECF No. 105 1). However, the Government's brief later discusses whether Defendant's "medical conditions . . . elevate his risk of serious illness from COVID 19" and argues "he does not face unacceptable risk associated with COVID 19." *Id.* at 6 7. Defendant's reply brief again highlights that he has contracted but recovered from the virus. ECF No. 127 at 1.

Although it appears from the record that Defendant's institution understood his compassionate release request as being grounded in his medical conditions but *not* on his particular risk of COVID 19, the Government has briefed the motion as if his request encompasses both such factual bases. Accordingly, for the sake of completeness, the Court will examine Defendant's request for compassionate release under both

theories, and next turns to the matter of whether both theories were adequately presented for administrative review.

### 4.3 Exhaustion

"A court may grant an inmate's request for compassionate release only 'after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf' or 'the lapse of 30 days' from the receipt of such a request by the warden without response   whichever is earlier." *United States v. Williams*, 987 F.3d 700, 702 (7th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (italics removed).

Defendant filed a petition with the warden of his institution, requesting "home detention/confinement" and referencing his medical conditions and weight loss, dated November 11, 2022. ECF No. 105 1. The clinical director of the institution issued a memorandum on November 17, 2022, advising that Defendant "d[id] not meet the criteria for a Terminal Medical Condition," "Debilitated Medical Condition" or "Elderly Inmates" status applicable to a "Reduction in Sentence request . . . (or compassionate release) request." ECF No. 105 2. The clinical director further advised that Defendant "has completed the COVID 19 vaccine series." *Id.* The warden, relying on this memorandum, denied Defendant's request on December 1, 2022. ECF No. 105 3. The warden's denial instructed Defendant that "[i]f you are dissatisfied with this response, you may file an appeal pursuant to Program Statement 1330.18, Administrative Remedy Program, within 20 calendar days of the date of this response." *Id.* Neither party has indicated whether Defendant pursued any additional administrative appeal.

Despite pointing out that Defendant did not mention his COVID 19 concerns in this petition to the warden, the Government concedes that

Defendant "appears to have exhausted his administrative remedies." ECF No. 105 at 3. Apart from this (rather confusing) concession, the Government offers no further discussion of the exhaustion issue, bypassing the questions of whether Defendant had a responsibility to pursue any further administrative appeal as indicated in the warden's denial, or whether "issue exhaustion" of both the medical conditions and the COVID 19 bases for compassionate release took place. *United States v. Crowder*, No. 03 CR 90 8, 2021 WL 698498, at *4 (N.D. Ill. Feb. 23, 2021); *see also Williams*, 987 F.3d at 704 (applying Prison Litigation Reform Act precepts to find that, in the compassionate release context, "an inmate cannot satisfactorily exhaust [administrative remedies] by filing a grievance on one ground and then suing in court on an unrelated ground").

Because the Seventh Circuit has held that "the exhaustion requirement . . . is an affirmative defense, not a jurisdictional prerequisite, so the government will lose the benefit of the defense if it fails to properly invoke it," the Court proceeds no further in the analysis. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (further noting that "the government properly invoked" failure to exhaust administrative remedies by "thoroughly briefing the issue in the district court"). By operation of the Government's concession technically inaccurate as it may be administrative exhaustion (or lack thereof) is not a barrier to consideration of the merits of Defendant's motion.

### 4.4    Extraordinary and Compelling Reasons

Upon consideration of the parties' submissions together with controlling statutory and case law, the Court finds that neither Defendant's medical conditions nor his risk of contracting or suffering complications

from COVID 19 constitute the extraordinary and compelling reasons required to make an offender eligible for compassionate release.

### 4.4.1 Medical Conditions

The Government argues against finding that Defendant's medical conditions constitute extraordinary and compelling reasons supporting his release because his "chronic conditions appear to be well managed within BOP, [and because] he is capable of self care within the prison system." ECF No. 105 at 7. The Government points out that Defendant has received and is receiving a high level of care, due at least in part to his classification as a "Care Level 3" inmate." *Id.* at 5. Moreover, the Government emphasizes that Defendant has shown that he is able to care for himself in the institutional setting  he "faithfully takes his medication" and has lost weight  and there is no indication that any of his physical or mental conditions are deteriorating. *Id.* at 5 6. Finally, the Government argues that Defendant's medical conditions "would persist even in a non custodial setting," and that he is "receiving adequate medical care for all his issues in the prison setting." *Id.* at 6.

Defendant responds by arguing that his classification as a Care Level 3 inmate is "only due to [him] having an implant ICD," seeming to suggest that his clinical visits and treatment are more limited in scope than what the Government states. ECF No. 127 at 1. He further argues that despite the Government's contention that he is not terminally ill, his conditions remain very serious because he could "pass away anytime." *Id.* at 2. Defendant concedes that he takes "numerous medications daily & faithfully" but maintains his conditions are serious. *Id.*

The Court concurs in the Government's arguments. While Defendant's medical conditions are certainly serious, there is no evidence

Case 2:19-cr-00075-JPS   Filed 07/19/23   Page 12 of 25   Document 133

in the record to suggest that any of them is terminal and has "an end of life trajectory." U.S.S.G. § 1B1.13 n.1.(A)(i). Nothing in the medical documentation the Government has submitted, ECF No. 105 4, indicates that a physician has found that Defendant presents a terminal condition; to hold otherwise would be to render an "unsupported medical judgment." *United States v. Newton*, 996 F.3d 485, 490 (7th Cir. 2021). Similarly, even considering the "cumulative effect of his comorbidities," *id.* at 489, Defendant has not shown that he is unable "to provide self care" for his several medical conditions "within the environment of a correctional facility." U.S.S.G. § 1B1.13 n.1.(A)(ii).

This case is distinguishable from *Newton*. There, the Seventh Circuit vacated the district court's denial of a compassionate release motion brought by a defendant with asthma, immune weakness due to corticosteroid usage, and hypertension, due to the court's failure to consider the aggregate effect of the defendant's conditions. 996 F.3d at 486 489. In the present case, while Defendant's conditions are each serious on their own and serious when considered together, the record does *not* reflect that Defendant is not receiving adequate care for them or is rendered unable to do his part in addressing the conditions. The fact that Defendant has lost a significant amount of weight[4] and takes his medications faithfully

---

[4]As noted *supra* Section 2, Defendant contends that he undertook to lose weight on the advice of his criminal defense attorney. ECF No. 99 at 3; ECF No. 127 at 1. Accepting Defendant's version of the facts as true, this is odd and perhaps inappropriate advice for a defense attorney to render to his or her client. For the reasons outlined in this section, Defendant's weight loss counsels against, not in favor of, granting his compassionate release motion, because it shows he is capable of self-care and improvement, at least as to his medical condition of obesity, in the institutional setting. In any event, the Court is not bound to accept a defense attorney's advice to his client as a reason to grant the client-defendant's compassionate release motion.

Case 2:19-cr-00075-JPS   Filed 07/19/23   Page 13 of 25   Document 133

indicates that he is capable of "provid[ing] self care." U.S.S.G. § 1B1.13 n.1.(A)(ii). And Defendant's implication that the care he receives as a Care Level 3 inmate is somehow limited to checking the ICD's batteries is plainly belied by the medical records the Government has submitted, which detail extensive clinical visits on a variety of issues. *See generally* ECF No. 105 4.

Accordingly, in light of all these facts, the Court concludes that Defendant's medical conditions do not amount to the extraordinary and compelling circumstances required to make one eligible for compassionate release.

### 4.4.2 COVID-19

The outbreak of COVID 19, together with underlying medical conditions that place a defendant at "high risk" should he contract the disease, may establish an extraordinary and compelling reason warranting release. *See, e.g.*, *United States v. Gonzales*, No. 13 CR 101 JPS, 2020 WL 4437154, at *4 (E.D. Wis. Aug. 3, 2020). However, over the past three years, the risk calculus has changed significantly given the introduction of several very effective and widely available vaccines that inoculate against COVID 19.[5]

It quickly became the law in the Seventh Circuit that, "for most prisoners[,] the availability of vaccines for COVID 19 'makes it impossible

---

[5]Importantly, on August 23, 2021, after rigorous and thorough evaluation, the Food and Drug Administration approved the Pfizer-BioNTech COVID-19 vaccine for all individuals aged 16 years and older. FDA News Release, U.S. Food & Drug Admin., FDA Approves First COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine. Other vaccines, including the Moderna vaccine, have been approved for emergency use since late 2020, with great success. *See* U.S. Food & Drug Admin., Moderna COVID-19 Vaccine (updated Aug. 18, 2021), https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/moderna-covid-19-vaccine.

to conclude that the risk of COVID 19 is an "extraordinary and compelling" reason for immediate release.'" *United States v. Sullivan*, No. 20 2647, 2021 WL 3578621, at *2 (7th Cir. Aug. 13, 2021) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)); *see also United States v. Burgard*, No. 20 3210, 2021 WL 3781384, at *2 (7th Cir. Aug. 26, 2021); *United States v. Eveland*, No. 20 3449, 2021 WL 3414202, at *1 (7th Cir. Aug. 5, 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). Still though, the Seventh Circuit has instructed district courts to take a deeper dive:

> We close with an observation about COVID 19 vaccines in the context of requests for compassionate release. The government points to our language in *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021), in which we said that the availability of vaccines had effectively eliminated the risks of COVID 19 to most federal prisoners. But that opinion was handed down before Omicron became the dominant variant in this country (with an increase in breakthrough infections among the fully vaccinated). And it included a safety valve for prisoners to show that they are unable to receive or benefit from a vaccine, or that they remain vulnerable to severe infection, notwithstanding the vaccine. *Id.* Recent events underscore the need for a district court's opinion to leave us assured that it considered the applicant's individualized arguments and evidence.

*United States v. Rucker*, No. 21 2001, 2022 WL 610625, at *3 (7th Cir. Mar. 2, 2022).

An individualized look at Defendant's case instructs that compassionate release is not appropriate based on his past COVID 19 diagnosis or his present risk of contracting the disease, even when considered together with his other medical conditions. While vaccination status does not immediately eliminate an inmate from consideration for early release, in Defendant's case it underscores that he is sufficiently protected from the virus. Due to very low levels of COVID 19 transmission

at FCI Allenwood Medium, *Rucker*'s concern about emergent variants is not at play here. The Court recognizes that some of Defendant's medical conditions put him at higher risk for severe illness from COVID 19 should he be reinfected.[6] But this risk is more speculative than tangible, given his vaccination status, prior exposure to and recovery from COVID 19, and the current low threat of infection at FCI Allenwood Medium.

In this lower risk context, Defendant has provided no compelling explanation as to why he is especially "vulnerable to severe infection, *notwithstanding* the vaccine." *Rucker*, 2022 WL 610625, at *3 (emphasis added); *see also Broadfield*, 5 F.4th at 803 (noting that a prisoner "who can show that he is unable to receive or benefit from a vaccine" might still be considered a good candidate for compassionate release "but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID 19 is an 'extraordinary and compelling' reason for immediate release"). Consistent with the Court's prior analysis, he does not explain why any vulnerabilities to COVID 19 owing to his underlying medical conditions cannot be managed from inside the prison setting. The Court therefore concurs in the Government's argument that Defendant "does not face unacceptable risk associated with COVID 19," ECF No. 105 at 6, and consequently that his COVID 19 risk is not an extraordinary and compelling circumstance warranting his release.

### 4.5    Sentencing Factors

---

[6]Ctrs. For Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 10, 2023) (noting chronic lung diseases such as COPD, depression, diabetes, heart conditions such as cardiomyopathy and hypertension, and obesity as among those conditions that "can make you more likely to get very sick from COVID-19").

Case 2:19-cr-00075-JPS    Filed 07/19/23    Page 16 of 25    Document 133

For the sake of completeness, the Court will further consider whether Defendant is a danger to any other person or the community, pursuant to § 3142(g), and whether the § 3553(a) sentencing factors militate for or against his release. "The court shall impose a sentence sufficient, but not greater than necessary," which considers "the nature and circumstances of the offense and the history and characteristics of the defendant," and which "compl[ies] with" the following needs:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a). Here, the Court finds that, even if Defendant had an extraordinary and compelling reason warranting his early release, the sentencing factors would not support such release.

Defendant has acknowledged that his conduct in this case  two bank robberies  involved drugs, coercion of his co defendants Alner Navarro and Jose Rivera, and threats of ostensible violence toward the public:





ECF No. 72 at 5  6, 8 (presentence investigation report); *see also* ECF No. 74 at 1 (minutes of sentencing hearing, wherein Defendant raised no objection to the facts as stated in the presentence investigation report). Alner Navarro and Jose Rivera were not the only individuals who got caught up in Defendant's scheme; ███████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ who he then
███████████████████████████████ ECF No. 72 at 11.
Defendant's adult criminal history dates back to 1999 and involves
numerous drug offenses and one theft at gunpoint. *Id.* at 13 16. Based on
these offenses, Defendant was designated a career offender. *Id.* at 4, 10. The
presentence investigation further noted that he ████████████████████
███████████████████████ *Id.* at 25.

Based on the foregoing, the Court is not persuaded that the § 3553(a)
factors counsel in favor of Defendant's release. While his submissions
include many assurances that he has moved past his prior offenses and the
decision making that led up to them, Defendant's conduct in this case and
his other criminal cases tells a different story, one in which Defendant has
repeated the same mistakes again and again, undeterred by criminal
sanctions. *See* 18 U.S.C. § 3553(a)(1) (requiring the Court to consider "the
nature and circumstances of the offense and the history and characteristics
of the defendant"). The seriousness of the crime, as well as the needs for
just punishment, deterrence, and protection of the public, 18 U.S.C. §
3553(a)(2)(A) (C), all weigh heavily in favor of requiring Defendant to serve
the entirety of his sentence which, at 96 months, was already well below
the applicable guidelines range of 151 to 188 months. ECF No. 74 at 1.
Further, Defendant has served only about half of his sentence. Releasing
Defendant at this time would undermine the importance that sentencing
reflect the seriousness of the underlying crime and promote respect for the
law.

In light of Defendant's lack of extraordinary and compelling reasons
for release together with the § 3553(a) analysis, the Court finds that
Defendant's motion for compassionate release must be denied.

**5. ADDITIONAL MOTIONS**

**5.1 Requests for Appointment of Counsel**

To the extent Defendant's submissions request appointment of counsel, those requests will be denied. ECF Nos. 106, 126. Defendant's first compassionate release motion, filed in 2020, was referred to Federal Defender Services of Wisconsin, Inc. ("FDS"), which declined to file a supplemental brief on Defendant's behalf. ECF Nos. 79, 81, 82. At this time, courts in the Eastern District of Wisconsin no longer refer motions for compassionate release to FDS. "Based on the Seventh Circuit Court of Appeals' decisions in *United States v. Foster*, 706 F.3d 887 (7th Cir. 2013), *United States v. Blake*, 986 F.3d 756 (7th Cir. 2021) and *United States v. Manning*, 5 F.4th 803 (7th Cir. 2021), holding that neither the Constitution nor the Criminal Justice Act (18 U.S.C. § 3006A) entitle persons seeking sentence adjustments under the [First Step Act of 2018] to appointed counsel at public expense," the January 2019 general order appointing FDS in First Step Cases filed in the Eastern District of Wisconsin has been vacated. General Order 23 4, *available at* https://www.wied.uscourts.gov/general orders/vacating january 2019 order appointing fdsw first step act cases general order 23 4 (Apr. 18, 2023).

The Court thus borrows principles from the civil context to examine Defendant's request. In a civil case, 28 U.S.C. § 1915(e)(1) authorizes the court to "request an attorney to represent any person unable to afford counsel." The decision whether to grant a request for counsel is a discretionary one. *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). The Seventh Circuit teaches that a district court should seek counsel to represent a litigant if (1) the litigant has made reasonable attempts to secure counsel or

has been effectively precluded from doing so, and (2) "the difficulty of the case   factually and legally   exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654  55 (7th Cir. 2007) (*en banc*)). Normally, a court would further consider "the plaintiff's literacy, communication skills, educational level, and litigation experience," as well as any information bearing on "the plaintiff's intellectual capacity and psychological history." *Pruitt*, 503 F.3d at 655. Finally, the litigant seeking counsel must not only provide the Court an explanation on these points but must also "offer reasons why counsel should be appointed that are not common to many other *pro se* litigants." *Young v. MilliporeSigma,* No. 18 cv 432 JPS, 2018 U.S. Dist. LEXIS 198281, at *2 (E.D. Wis. Nov. 21, 2018) (citing *Bracey v. Grondin*, 712 F.3d 1012, 1017  18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656; and *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014)).

Defendant's filings do not indicate whether he has sought counsel on his own. However, the totality of his filings indicate that he has been able to cogently litigate his own case; for example, he managed to attain extensions of time as needed to fully brief his motion. As to Defendant's contention that "with a[n] appointed lawyer's help" he might have submitted a more compelling reply brief, ECF No. 126 at 2, the Court cannot speculate on whether an attorney might have presented the merits of this case differently, but notes that it was able to discern all of Defendant's arguments although they were presented without the assistance of counsel. In this case, it is the facts underlying the motion together with the controlling law  not the lack of assistance of counsel  that drive the outcome.

For these reasons, the Court did not earlier and does not now see a need to appoint counsel. Further, in light of the general lack of volunteer attorneys to match the volume of requests for appointed counsel, the Court finds it prudent to preserve the limited resources of pro bono counsel for other cases and litigants.

### 5.2    Requests Related to Economic Payments

Defendant has filed numerous requests for the Court to assist him in accessing COVID 19 economic stimulus payments, all of which will be denied. ECF Nos. 109, 117, 120, 125, 128, 131. Back in late fall of 2022, the Court noted that, at Defendant's request, the Treasury Offset Program reversed certain tax refund offsets by which Defendant's COVID 19 economic stimulus payments had earlier been applied to satisfy his court imposed financial obligations. ECF No. 98 at 4; *see also* ECF Nos. 84, 89, 90, 92, 93, 97, 98, 100, 102, 103, 108. Accordingly, the Court and Defendant believed he would receive those funds in his inmate trust account. However, that appears not to have been the case, with Defendant's more recent filings indicating that he never received those funds in his inmate account. ECF Nos. 109, 117, 120, 125, 128, 131.

The Court recently instructed Defendant that it "ha[d] no more information about the status of [his] funds than [he] himself does" and prompted Defendant to take the matter up with the Treasury Department. ECF No. 116 at 3. This remains the case. The Court directly communicated with BOP staff at FCI Allenwood Medium and confirmed that the funds had not been deposited in Defendant's trust account. However, this gives the Court no more information than Defendant currently has about where the funds *are*. Defendant would be well advised to investigate the account number and address to which the Treasury Department sent the economic

payments (on the off chance that the Treasury is using information, for example, from a tax filing that predates Defendant's incarceration, or other incorrect information). In general, the Treasury Department will likely be the best source of information for Defendant on this matter. Beyond this, the Court has no further advice or information to provide Defendant on this issue. Further filings from Defendant on the matter of his economic payments will be disregarded.[7]

### 5.3    Requests for Return of Filings

Defendant requests that an attachment to one of his filings be returned to him. ECF No. 106. The Court will direct the Clerk of Court to mail Defendant a copy of ECF No. 106 2 along with this Order.

### 5.4    Government's Motion to Seal

The Government seeks to seal its entire submission in opposition to Defendant's motion, including the brief and all four of its attachments. ECF No. 104. The basis for the Government's request is that its response "references other sealed documents, the defendant's medical history, the defendant's Pre Sentence Report, and Federal Bureau of Prisons medical records, which should all remain confidential." *Id.*

---

[7]Defendant inquires as to whether either of his co-defendants has made any payments in satisfaction of the joint and several restitution that was ordered in this case. ECF No. 131. In addition to the responsive information provided by the Clerk of Court, ECF No. 132, Defendant is reminded that the sentencing judgment in this case dictates that the full amount of joint and several restitution may be recovered from him and him alone, and need not be paid via equal contribution from each responsible co-defendant. *See U.S. v. Sensmeier*, 361 F.3d 982, 990 (7th Cir. 2004) ("When there is more than one defendant that has contributed to the loss of a victim, district courts enjoy the option of either imposing full liability on each defendant or apportioning the liability among the defendants to reflect the culpability and economic circumstances of each.").

Medical records and documents containing personally identifiable health information are generally maintained under seal. *Love v. Med. Coll. of Wis.*, 371 F. Supp. 3d 489, 498 (E.D. Wis. 2016). Likewise, "[p]resentence reports have not generally been available to the public . . . ." *United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989). On the other hand, materials "generally discussing the record," even when the underlying record "contain[s] sensitive medical information," are typically not sealed. *Love*, 371 F. Supp. 3d at 498 (citing *Sutterfield v. City of Milwaukee*, 870 F. Supp. 2d 633, 645 (E.D. Wis. 2012).

Because the Government's submission does more than generally discuss Defendant's medical history as well as his presentence investigation report, the Court will grant the Government's motion to seal its entire submission in opposition to Defendant's motion. By the same token, because Defendant attached his own medical records to one of his filings, that attachment, ECF No. 106 2, will also be maintained under restriction. Finally, because the Court has extensively quoted from the Pre Sentence Report this Order, it will direct that this Order be entered under restriction so that only the parties to the case may view it in full; a version redacting quotations from the Pre Sentence Report will be publicly available on the docket.

6. **CONCLUSION**

Defendant has not proffered an extraordinary and compelling reason warranting his release nor would his early release be justified under the § 3553(a) sentencing factors if he had done so. Therefore, the Court will deny Defendant's motion for compassionate release, ECF No. 99. The remainder of the pending motions are resolved as set forth in this Order.

Accordingly,

**IT IS ORDERED** that Defendant's motion for compassionate release, ECF No. 99, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's requests for appointment of counsel, ECF Nos. 106 and 126, be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's requests for assistance related to his economic payments, ECF Nos. 109, 117, 120, 125, 128, 131, be and the same are hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Clerk of Court mail Defendant a copy of ECF No. 106 2 along with this Order;

**IT IS FURTHER ORDERED** that the Government's motion to seal, ECF No. 104, be and the same is hereby **GRANTED**; the attachment to the Government's submission and its attachments, ECF Nos. 105, 105 1, 105 2, 105 3, and 105 4 4, be and the same are hereby **SEALED** until further order of the Court;

**IT IS FURTHER ORDERED** that Defendant's filing at ECF No. 106 2 shall be maintained under restriction;

**IT IS FURTHER ORDERED** that this Order be and the same is hereby **RESTRICTED**, with a redacted version to be publicly available on the docket.

Dated at Milwaukee, Wisconsin, this 19th day of July, 2023.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge